Daniel C. Girard (State Bar No. 114826)
Eric H. Gibbs (State Bar No. 178658)
Adam E. Polk (State Bar No. 273000)
Steve A. Lopez (State Bar No. 300540)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846
Email: dcg@girardgibbs.com
Email: aep@girardgibbs.com
Email: ehg@girardgibbs.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSELL EZOVSKI, DEVONNE BOWLING, and ROBERT SMITH, individually and on behalf of all others similarly situated, | Case No. 4:15-cv-1074 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| vs. | **DEMAND FOR JURY TRIAL** |
| LUMBER LIQUIDATORS, INC., LUMBER LIQUIDATORS HOLDINGS, INC., LUMBER LIQUIDATORS LEASING, LLC, and LUMBER LIQUIDATORS SERVICES, LLC, | |
| Defendants. | |

Plaintiffs Russell Ezovski, Devonne Bowling, and Robert Smith, individually and on behalf of themselves and all others similarly situated, allege the following against Defendants Lumber Liquidators, Inc., Lumber Liquidators Holdings, Inc., Lumber Liquidators Leasing, LLC, and Lumber Liquidators Services, LLC  (collectively, "Lumber Liquidators").

## SUMMARY OF THE CASE

1.      With 354 stores located in 46 states and Canada, Lumber Liquidators describes itself as the largest specialty retailer of hardwood flooring in North America. In 2014 alone, Lumber Liquidators sold over 310 million square feet of flooring through over 620,000 transactions, and earned over $1 billion—nearly a 5% increase from 2013.  Lumber Liquidators has accomplished such growth by expanding their gross profit margins and cutting costs to a remarkable degree.

2.      Lumber Liquidators' cost cutting steps have come at the expense of consumers, including Plaintiffs and Class members.  According to recent testing performed by at least three accredited laboratories, Lumber Liquidators' Chinese-manufactured laminate flooring contains toxic levels of formaldehyde—a poisonous chemical that the United States National Toxicology Program and Europe's International Agency for Research on Cancer classify as a human carcinogen.  In one series of tests, 30 out of 31 boxes of Lumber Liquidators' laminate flooring contained excessive levels of formaldehyde, with some levels being close to 20 times above the level that is permitted to be sold.

3.      Lumber Liquidators deliberately deceived its customer base about the safety of its laminate flooring. Although every box of Lumber Liquidators laminate claims compliance with the standards of the California Air Resources Board ("CARB"), the laminate produced in China does not meet these requirements.  Despite adverse test results and a recent hidden camera exposé that shows Lumber Liquidators manufacturers admitting that Lumber Liquidators laminate flooring is not CARB compliant, Tom Sullivan—chairman and founder of Lumber Liquidators—continues to represent to the public that "all of our products, are 100% safe."[1]

4.      To cut costs and increase its gross margins, Lumber Liquidators (and the entities in its supply chain that it controlled and oversaw) jeopardized the health of Plaintiffs and Class members.  As

---

[1] Lumber Liquidators Holdings, Inc., Current Report (Form 8-K), (March 2, 2015).

CLASS ACTION COMPLAINT – Case No. 4:15-cv-1074

one industry insider explained—"[f]ormaldehyde is used as a cheap glue in the making of laminate and engineered wood floors. If you jack up the amount of resin, it allows you to basically take your production rate on your press and increase it by 50 percent, so instead of making a million panels you'll make a million and a half panels."[2]

5.      Lumber Liquidators knows that typical consumers cannot discern that the affected laminate flooring contains toxic levels of formaldehyde and that Plaintiffs and Class members would not have purchased such flooring had Lumber Liquidators disclosed that it is not CARB compliant. Lumber Liquidators' conduct thus constitutes a deceptive business practice, false advertising, and negligence. Plaintiffs and the proposed Class of laminate flooring purchasers (as further defined below) are therefore entitled to monetary damages—including exemplary damages—and injunctive relief, including a full return of the purchase price and installation costs.

## PARTIES

6.      Plaintiff Russell Ezovski is a resident of California.

7.      Plaintiff Devonne Bowling is a resident of California.

8.      Plaintiff Robert Smith is a resident of Texas.

9.      Defendant Lumber Liquidators Holdings, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia, 23168.

10.     Defendant Lumber Liquidators, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia, 23168.

11.     Defendant Lumber Liquidators Leasing, LLC is a Delaware limited liability company with its principal place of business at 3000 John Deere Road, Toano, Virginia, 23168.

12.     Defendant Lumber Liquidators Services, LLC is a Delaware limited liability company with its principal place of business at 3000 John Deere Road, Toano, Virginia, 23168.

13.     Lumber Liquidators Holdings, Inc. and its subsidiaries operate as a single business segment, with its call center, website and customer service network supporting its retail store operations. Lumber Liquidators conducts substantial business in the state of California. There are 354 Lumber

---

[2] Matthew Handley, *Dark Days Ahead for Lumber Liquidators*, Seeking Alpha (March 4, 2015), http://seekingalpha.com/article/2971886-dark-days-ahead-for-lumber-liquidators (last visited March 6, 2015).

Liquidators stores in the United States and 38 in California alone, representing Lumber Liquidators' largest United States presence. California is an integral piece of Lumber Liquidators' supply chain as its 500,000 square foot primary distribution center for the west coast is located in California.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from Defendants; there are more than 100 Class members; and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

15.     The Court has personal jurisdiction over Defendants because they conduct substantial business in this District.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants reside in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred here.

## INTRADISTRICT ASSIGNMENT

17.     Assignment is proper to the Oakland division of this District under Local Rule 2(c)-(d), as a substantial part of the events or omissions which give rise to the claim occurred in Alameda County.

## FACTUAL ALLEGATIONS

**Lumber Liquidators, Its Competitors, and the Importance of Laminate Flooring to Its Business**

18.     Lumber Liquidators conducts business throughout the United States, operating 352 total stores. Lumber Liquidators describes itself as "the largest specialty retailer of hardwood flooring in North America." It offers its customers a "Value Proposition," stating "[o]ur retail prices in each merchandise category are generally lower than our competitors. . . . We are able to maintain these prices by sourcing proprietary products directly from the mill . . . ."[3]

19.     Lumber Liquidators' top three competitors are Home Depot, Lowe's, and Stock Building. As of fiscal 2013, Lumber Liquidators beat each of these competitors' gross margins (net sales minus the cost of goods) by between 13% and 20%. It did so by paying substantially less than its competitors

---

[3] Lumber Liquidators Holdings, Inc., Annual Report (Form 10-K), at 2 (Feb. 25, 2015).

CLASS ACTION COMPLAINT – Case No. 4:15-cv-1074

for its flooring materials, including laminate flooring, which constituted 38% of its 2014 net sales in combination with bamboo, cork, and vinyl plank.

20. Lumber Liquidators describes its "proprietary" laminate flooring as "typically constructed with a high-density fiber board core, inserted between a melamine laminate backing and high-quality photographic paper displaying an image of wood with a ceramic finish, abrasion resistant laminate top."[4]

21. To save on the cost of its laminate flooring—a key product for its business—and to increase its gross margins, Lumber Liquidators contracts with certain mills in China to manufacture much of its laminate flooring.

22. Lumber Liquidators controls and directs its supply chain, which it represents "is wholly focused on delivering our complete assortment of products to our customers more timely than our competitors."[5] In addition to distribution centers in California and Virginia, Lumber Liquidators also leases a third party consolidation center in China to "break bulk shipments from Chinese mills into quantities that can be sent directly to our store locations."[6]

23. Lumber Liquidators follows a "direct sourcing model"—it states that it sources directly from mills to offer "high-quality proprietary products"—including its proprietary laminate flooring—at a lower cost than its competitors. Lumber Liquidators represents that it has:

> strong relationships with mills around the world where the significance of our scale, breadth of assortment and liquidity allow for both higher quality and lower cost. We believe our collaborative relationship enhances the mills' productivity, yield, and financial flexibility such that we access lower net costs than our competitors.[7]

24. Regarding quality control at such mills, Lumber Liquidators represents that it sets "demanding specifications for product quality and our own quality control and assurance teams are on-

---

[4] *Id.* at 4.

[5] *Id.* at 5.

[6] *Id.*

[7] *Id.* at 3.

site at certain mills, coordinating inspection and assurance procedures."   It purportedly invests "significant resources" to design and produce products of the "highest quality" and issues its own "proprietary brands"—like the laminate flooring at issue in this case—to "allow us greater control over product design and production, which we monitor through an expansive network of experienced quality control and assurance professionals."[8]

25.   Despite  its representations, as of September 2013, Lumber Liquidators employed only 60 people internationally to perform such quality control across its approximately 130 domestic and international mills.

26.   In the case of its proprietary Chinese-manufactured laminate flooring, Lumber Liquidators' quality control was lacking, resulting in Plaintiffs and Class members purchasing toxic laminate flooring.  According to a recent report by *60 Minutes*, there are likely "tens of thousands of households in California that have installed Lumber Liquidators Chinese laminates that may exceed formaldehyde standards."[9]  The toxic flooring poses a serious and imminent health risk to Lumber Liquidators' customers—including Plaintiffs and Class Members.  And this crisis has caused some analysts to question whether Lumber Liquidators intentionally sacrificed quality control to artificially boost its gross margins.

27.   This is not the first environmental issue that Lumber Liquidators caused in recent years. In September 2013, federal agents raided Lumber Liquidators' offices to investigate claims that the company was illegally sourcing its wood.  Lumber Liquidators has now disclosed that it could face criminal charges based on allegations that its Chinese suppliers harvested millions of square feet of wood from the protected habitat of the Siberian White Tiger—an endangered species.

### Dangers of Formaldehyde and the CARB Standards for Formaldehyde in Laminate Flooring

28.   The Agency for Toxic Substances & Disease Registry describes formaldehyde as "a nearly colorless gas with a pungent, irritating odor even at very low concentrations."   Results of exposure include headaches and minor irritation at levels below the odor threshold—0.5-1 parts per

---

[8] *Id.* at 2-3.

[9] Anderson Cooper, *Lumber Liquidators Linked to Health and Safety Violations*, 60 Minutes (March 1, 2015), http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations/ (last visited March 6, 2015).

CLASS ACTION COMPLAINT – Case No. 4:15-cv-1074

million ("ppm").   But people can become sensitized to the odor and sustained exposure can cause rhinitis, dyspnea, severe mucous membrane irritation, burning, lacrimation, and lower respiratory effects such as bronchitis, pulmonary edema, and pneumonia.   Because formaldehyde vapors are slightly heavier than air, they can result in asphyxiation in enclosed or low-lying areas or areas with poor ventilation.

29.   Formaldehyde is also a known human carcinogen.   According to the National Cancer Institute, formaldehyde is classified as a cancer-causing substance by the International Agency for Research on Cancer, the Environmental Protection Agency ("EPA"), and the National Toxicology Program—an interagency program of the Department of Health and Human Services.   Research studies dating back to 1980 demonstrate that formaldehyde exposure is associated with nasopharyngeal cancer and leukemia.

30.   The health risks presented by formaldehyde are exacerbated in children, who demonstrate an increased risk of developing asthma and other adverse health effects from exposure to the chemical. According to one report about increased levels of formaldehyde in Lumber Liquidators' products, "children are featured prominently in Lumber Liquidators' ads and the company likes to promote the donation of flooring they make to Habitat for Humanity, Ronald McDonald House charities, schools, and community centers."[10]

31.   In California, formaldehyde has been listed as a carcinogen since 1988 and a toxic air contaminant with no safe level of exposure since 1992.

32.   The CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007.   The formaldehyde emission standards became effective in January 2009 and set decreasing limits in two phases.   Cal. Code Regs., tit. 17, § 93120.2(a).

33.   The CARB regulations apply to laminate products, including laminate flooring.   Cal. Code Regs., tit. 17, § 93120.2(a).

34.   The CARB Phase 1 Emission Standards for medium density fiberboard ("MDF") and Thin MDF (MDF with a maximum thickness of 8 mm) limited formaldehyde emissions to 0.21 ppm

---

[10] *Id.*

CLASS ACTION COMPLAINT – Case No. 4:15-cv-1074

beginning on January 1, 2009.  Since January 1, 2011, the Phase 2 MDF Emission Standard requires MDF flooring products with a density greater than 8 mm to emit no more than 0.11 ppm of formaldehyde.  Beginning on January 1, 2012, Thin MDF flooring products must emit no more than 0.13 ppm of formaldehyde.  Cal. Code Regs., tit. 17, 93120.2(A).[11]

35.    It is illegal to sell laminate flooring in California that exceeds the CARB limits.

## The Affected Laminate Flooring

36.    Lumber Liquidators supplied and sold certain laminate flooring products that contained toxic levels of formaldehyde in excess of the CARB limits to Plaintiffs and Class members, exposing them to significant and imminent health risks.

37.    According to testing performed by at least three accredited laboratories, at least the following laminate flooring products contain excessive formaldehyde levels:

- 8 mm Bristol County Cherry Laminate Flooring
- 8 mm Dream Home Nirvana French Oak Laminate Flooring
- 12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring
- 12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring
- 12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring
- 15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring
- 12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring
- 12 mm Dream Home Kensington Manor Imperial Teak Laminate Flooring
- 12 mm Dream Home St. James Vintner's Reserve Laminate Flooring
- 12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring
- 12 mm St. James Cumberland Mountain Oak Laminate Flooring
- 12 mm Dream Home Ispiri Americas Mission Olive Laminate Flooring
- 12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring
- 12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring
- 12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring
- 12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring

[11] Hereinafter referred to as the "CARB limits."

- 12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring
- 12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring
- 8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring
- 12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring;
- 12 mm Dream Home St. James Brazilian Koa Laminate Flooring
- 12 mm Dream Home St. James Golden Acacia Laminate Flooring
- 12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring
- 12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring
- 12 mm Dream Home St. James African Mahogany Laminate Flooring
- 12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring
- 12 mm Dream Home St. James Nantucket Beech Laminate Flooring

38.     *60 Minutes* tested thirty-one boxes of laminate flooring purchased from Lumber Liquidators, including some of the above-listed products.  Two accredited laboratories, Hardwood Plywood and Veneer Association ("HPVA") Laboratories and Benchmark International, tested the laminate for compliance with standards set by CARB and the California Department of Public Health.  Of the thirty-one boxes tested, only one complied with formaldehyde emissions standards and some were thirteen times the California limit.  Both laboratories told *60 Minutes* they had never seen formaldehyde levels as high.  The worst sample emitted a concentration that the EPA has cited as "polluted indoor conditions."[12]

39.     Two other accredited laboratories performed fifty separate tests on some of the laminate products listed above, including test methods developed by the American Society for Testing and Materials.  This testing also establishes that Lumber Liquidators' Chinese-produced laminate flooring contains formaldehyde that exceeds the CARB limits by a significant margin.

40.     The list of affected laminate flooring continues to grow.  And because of the Lumber Liquidators manufacturing process, it is possible that types of flooring other than laminate may also contain toxic levels of formaldehyde.

---

[12] Cooper, *Lumber Liquidators Linked to Health and Safety Violations*, *supra* note 9.

CLASS ACTION COMPLAINT – Case No. 4:15-cv-1074

41.     In addition to laminate flooring, Lumber Liquidators also manufactures "Engineered Hardwood" which it describes as being "produced by bonding a layer of hardwood to a plywood or high-density fiber board backing."   The description is similar to its description of laminate flooring, which it says is "constructed with a high-density fiber board core" and is also bonded with glue.[13]

42.     According to HPVA member Kip Howlett, "[f]ormaldehyde is used as a cheap glue" in "laminate and engineered wood floors."   And here, formaldehyde was reported to be present in glue used to hold together layers of Lumber Liquidators laminate flooring.  Because Lumber Liquidators sells laminate flooring and engineered hardwood produced in China that contains similar components that are bonded together with glue, engineered hardwood may also contain toxic levels of formaldehyde.  As one report notes "[f]or those that believe Engineered Hardwood flooring is not affected by this issue, I would direct you to the 10K where the descriptions used for the backing materials for the Laminate are identical to those used for the Engineered Hardwood."[14]

43.     Lumber Liquidators exposed its customers and others to toxic levels of formaldehyde—a recognized known carcinogen—to maintain and increase its industry-leading margins.  As HVCA member Kip Howlett put it, by using formaldehyde as cheap glue, Lumber Liquidators is able to make "a million and a half panels" instead of a million.[15]   *60 Minutes* also reported that laminate flooring from Home Depot and Lowe's—two of Lumber Liquidators' biggest competitors that trail it in reported gross margin—tested for acceptable levels of formaldehyde.

44.     One expert on American-Chinese supply chain relationships indicated that the formaldehyde crisis may be the result of deficient quality control efforts by Lumber Liquidators:

> Probably 98 percent of the time when there is a product problem in China, a lot of the blame lies
> with the American company . . . .   If they have a really good contract with their supplier, then
> they should be in pretty good shape . . . .   If not, then they could have a problem.[16]

---

[13] Lumber Liquidators Holdings, Inc., Annual Report (Form 10-K), at 4 (Feb. 25, 2015).

[14] Handley, *Dark Days Ahead for Lumber Liquidators*, *supra* note 2.

[15] *Id.*

[16] Everett Rosenfeld, *'Made in China' Doesn't Have to Mean Dangerous*', CNBC (March 4, 2015), http://www.cnbc.com/id/102470304 (last visited March 6, 2015).

9

CLASS ACTION COMPLAINT – Case No. 4:15-cv-1074

Accordingly, the key to such contracts is for the American company to "scare the heck out of a Chinese company" with very specific details about quality expectations, as well as minutia concerning subcontracts and repayment for deficient products.

45.     According to a Chinese manufacturing consultant, vigilant oversight is critical for American companies who are concerned with maintaining quality control:

> "[American companies need to] understand that the contract is viewed differently in Asia than in the U.S.  We sign and think that's the end, but in China the view is completely opposite . . . . They start cutting corners as soon as production begins.  Any company can demand a low price, and then the Chinese manufacturer kind of does what they want."[17]

### **Lumber Liquidators' False Statements Relating to the Affected Laminate Flooring**

46.     Lumber Liquidators  sold consumers laminate flooring containing levels of formaldehyde well in excess of the CARB limits, and falsely warranted its flooring as "Compliant for Formaldehyde." These false certifications have only exacerbated the danger to Plaintiffs and Class members.

47.     Lumber Liquidators' laminate packaging includes several false certifications.  For example, the following image is of the package of one of the affected laminate flooring products.  It falsely warrants that it is "CARB No. SCS-CARB-000090 California 93120 Phase 2 Compliant for Formaldehyde."

---

[17] *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15  According to *60 Minutes*, "every box" of Lumber Liquidators laminate flooring makes similar
16  warranties.

17      48.     Lumber Liquidators purchase orders are also accompanied by a warranty stating that such
18  flooring complies "with all applicable laws, codes and regulations," and "bears all warnings, labels, and
19  markings required by applicable laws and regulations."

20      49.     Moreover, Lumber Liquidators falsely represents on its website that it complies with the
21  CARB limits when it does not, specifically representing:

22
23      Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills
24      whose production method has been certified by a Third Party Certifier approved by the State of
25      California to meet the CARB standards.  . . . Lumber Liquidators made a decision to require all
26      of our vendors to comply with the California Air Resources Board regulations regardless of
27      whether we intended to sell the products in California or any other state . . . . Lumber Liquidators

28

regularly selects one or more finished products from each of its suppliers and submits them for independent third-party lab testing.

Lumber Liquidators' website has also represented that all of its flooring "meets or exceeds rigorous emissions standards," affirming "we not only comply with laws—we exceed them."

50.     However, statements by Lumber Liquidators Chairman and Founder Tom Sullivan and employees at its Chinese mills establish that the representations described above are false and that Lumber Liquidators knew prior to shipment that the affected laminate flooring contains toxic levels of formaldehyde.

51.     The *60 Minutes* report included a hidden camera investigation, which illustrates Lumber Liquidators' false statements:

- Posing as a buyer, an investigator asks about certain laminate flooring and is told by a general manager of the mill: "This is a best-seller for Lumber Liquidators."  After confirming that the mill has been selling the laminate flooring for more than a year, the investigator asks: "Is this CARB 2?"  The general manager responds, "**No, no, no . . . I have to be honest with you.  It's not CARB 2.**"

- The investigator then asks whether it is possible to obtain laminate flooring within the CARB limits.  He is told: "Yes, you can. It's just the price issue.  We can make CARB 2 but it would be very expensive."

- Referring to Lumber Liquidators laminate flooring with the above-described warranties, the investigator asks a Chinese mill employee: "All this stuff here, Lumber Liquidators . . . All their labelling is CARB 2, right? But it's not 2?"  The employee confirms: "**Not CARB 2.**"[18]

52.     When confronted with the fact that employees at all three of the mills *60 Minutes* investigated admitted that the Lumber Liquidators laminate flooring they manufacture is not compliant—and after being shown videotape of those employees making such admissions—Mr. Sullivan made the following statements:

---

[18] Cooper, *Lumber Liquidators Linked to Health and Safety Violations*, *supra* note 9 (emphasis added).

- "I don't know the whole situation here. I will guarantee you we will be in that mill tomorrow and test it.  And **that is not anything we can condone in any way to save a cent**."

- When asked if the admissions of the mill employees concerned him, he admitted: "Yeah . . . yeah . . . of course."

- When asked if the results of the *60 Minutes* investigation were acceptable to him, Mr. Sullivan stated: "If it's true, no."

- Mr. Sullivan also admitted that if the labels on the laminate flooring that was the subject of the investigation did—as they were proven to—say "CARB 2 Compliant" then "that would be [cheating] . . . ."

- Lastly, Mr. Sullivan confirmed that the results of the *60 Minutes* investigation "called into question" Lumber Liquidators' oversight of its Chinese mills.[19]

53.     Moreover, Lumber Liquidators admitted that its statements to Plaintiffs and Class members could be false by disclaiming control over entities in its supply chain in its SEC filings, including in its annual report for 2014, where it stated:

> While our suppliers agree to operate in compliance with applicable laws and regulations, including those related to environmental and labor practices, we do not control our suppliers. Accordingly, despite our continued investment in quality control, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical, and responsible manner.[20]

In light of this concession, Lumber Liquidators knew at the time it made the above described warranties of CARB compliance that the products accompanying such warranties might not be CARB compliant.

54.     Lumber Liquidators is also aware of the importance of flooring purchases to its customer base.  In its annual report for 2014, it states "A flooring purchase is generally a large-ticket, discretionary purchase that most residential homeowners purchase infrequently.    Few home

---

[19] *Id.* (emphasis added).
[20] Lumber Liquidators Holdings, Inc., Annual Report (Form 10-K), at 14 (Feb. 25, 2015).

CLASS ACTION COMPLAINT – Case No. 4:15-cv-1074

improvements however, have as much consequence to the ambiance of a room as the flooring."[21]  As one reporter noted, Lumber Liquidators understands the "incredible cost . . . flooring represents for their customers and also the emotional and aesthetic elements those same products involve."  Lumber Liquidators' level of understanding of its product and market placement thus renders the above-described misstatements more egregious and accentuates the damage such misstatements have caused to Plaintiffs and Class members.[22]

55.    Lumber Liquidators' multiple and repeated false statements to its customers that its products are CARB compliant are germane to customers' health and safety and are therefore material because a reasonable consumer would find them important in making their purchase decision.

56.    Acting reasonably, had Plaintiffs and Class members known that Lumber Liquidators' statements about the levels of formaldehyde in its laminate flooring were false, they would not have purchased such laminate flooring.

57.    Plaintiffs and Class members are justified in incurring the cost of replacing the toxic floors Lumber Liquidators sold them under false pretenses.  The alternative is for Plaintiffs and Class members to subject themselves, and their family members to significant health hazards due to toxic levels of formaldehyde.

**Lumber Liquidators' Evolving Stance on the Formaldehyde Crisis and Recent Governmental Intervention**

58.    Since *60 Minutes* publicized its findings—and despite the admissions made on videotape by employees at its own foreign mills—Lumber Liquidators and Mr. Sullivan have become more defensive.  In a recent letter released on Lumber Liquidators' website, Mr. Sullivan stated:

Let me make one thing very clear—our laminate products, all of our products, are 100% safe. We comply with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products—the most stringent rules in the country.  We take our commitment to safety even further by employing compliance personnel

---

[21] *Id.* at 6.

[22] Handley, *Dark Days Ahead for Lumber Liquidators*, supra note 2.

around the world and utilizing the latest in cutting-edge technology to provide our customers with top quality and high value flooring.[23]

59.     On Monday, March 2, 2015—in the face of the *60 Minutes* investigation and its chairman's admissions that he was concerned that the results of the investigation are unacceptable, and that quality control at the company may be lacking—Lumber Liquidators trumpeted its safety record in a an SEC filing, stating:

Lumber Liquidators is a leader in safety, as evidenced by our track record of providing our wide range of products to two million satisfied customers across America.  We comply with applicable regulations set by the [CARB] . . . .  Although the CARB regulations only apply in California, we adhere to these standards everywhere we do business.  Every manufacturer of fiberboard cores used in our products is certified in accordance with CARB regulations.

. . .

After becoming aware of the nature and content of the 60 Minutes story, we immediately reached out to the Chinese suppliers included in the story.  The suppliers have confirmed that all products provided to Lumber Liquidators have been and are CARB compliant.[24]

60.     Lumber Liquidators explained the damning *60 Minutes* footage by questioning its authenticity:

The suppliers could not verify the identity of the individuals appearing in the videos.  One of the suppliers featured questioned whether the product shown was actually from its factory.  We randomly test each of our six laminate suppliers in China using unannounced audits and all

---

[23] Tom Sullivan, *60 Minutes Letter From Tom*, Lumber Liquidators (March 2015), http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/ (last visited March 6, 2015).

[24] Lumber Liquidators Holdings, Inc., Current Report (Form 8-K), (March 2, 2015).

products tested are compliant and safe. Again, the results of third-party testing are on our website.[25]

61.     Lumber Liquidators continues to sell its laminate flooring products—including the products at issue in this action—with the false representation that they are CARB compliant. It has not announced a recall or any planned changes to its current quality control protocol.

62.     Despite Lumber Liquidators stiffening its support of its business practices and continuing to stand behind its products, external scrutiny and criticism have continued to increase. On March 4, 2015, Senator Bill Nelson called for a federal investigation of Lumber Liquidators, stating "[b]ecause this could affect millions of homeowners, it's imperative we get some answers quickly." The Consumer Product Safety Commission "share[d] Senator Nelson's perspective that this is an issue we must respond to . . . ."[26]

## PLAINTIFFS' LAMINATE FLOORING PURCHASES

63.     Russell Ezovski purchased Lumber Liquidators' 12 mm Dream Home St. James Nantucket Beech Laminate Flooring in approximately early 2013 and again in or around October 2014. He made both purchases at Lumber Liquidators stores in California. The laminate flooring he purchased is one of the models that was tested and shown to have levels of formaldehyde in excess of the CARB limits as described above.

64.     Devonne Bowling purchased Lumber Liquidators' 15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring in June 2013 from a Lumber Liquidators in California. The laminate flooring she purchased is one of the models that was tested and shown to have levels of formaldehyde in excess of the CARB limits described above.

65.     Robert Smith purchased Lumber Liquidators' 12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring on approximately October 14, 2014 from a Lumber Liquidators

---

[25] *Id.*

[26] Jacob Pramuk, *Senator Urges US to Probe Lumber Liquidators*, CNBS (March 4, 2015), http://www.cnbc.com/id/102459021 (last visited March 6, 2015).

CLASS ACTION COMPLAINT – Case No. 4:15-cv-1074

store in Texas.  The laminate flooring he purchased is one of the models that was tested and shown to have levels of formaldehyde in excess of the CARB limits as described above.

66.     Before purchasing their Lumber Liquidators laminate flooring, Plaintiffs reviewed the product labels of their laminate flooring.  These packages warranted that the laminate flooring they purchased was CARB compliant and did not disclose that the laminate flooring contained an toxic level of formaldehyde.  They chose to purchase Lumber Liquidators brand laminate flooring instead of competing products based in part on these representations.  Thus, Plaintiffs reasonably believed at the point of sale that the laminate flooring they purchased did not contain toxic levels of formaldehyde or levels exceeding the CARB limits.

67.     Had Plaintiffs known that the laminate flooring they purchased contained levels of formaldehyde exceeding the CARB limits or toxic levels of formaldehyde, they would not have purchased such laminate flooring.

## **CLASS ACTION ALLEGATIONS**

68.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and a proposed nationwide class ("Class") initially defined as:

*All persons who purchased laminate flooring manufactured in China from Defendants in the United States, other than for purposes of resale.*

69.     Excluded from the proposed Class are Defendants Lumber Liquidators Holdings, Inc., Lumber Liquidators, Inc., Lumber Liquidators Leasing, LLC, Lumber Liquidators Services, LLC, any parent, affiliate, or subsidiary of Defendants; any entity in which Defendants have a controlling interest; any of Defendants' officers or directors; any successor or assign of Defendants; anyone employed by counsel for Plaintiffs; any Judge to whom this case is assigned, his or her spouse, and all persons within the third degree of relationship to either of them.

70.     Numerosity of the Class – Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at the present time and can only be ascertained through appropriate discovery,

Plaintiffs believe that there are thousands of Class members located throughout the United States. It would be impracticable to join the Class members individually.

71.     Existence and Predominance of Common Questions—Fed. R. Civ. P. 23(a)(2), 23(b)(3). Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common questions include:

a.      Whether Lumber Liquidators maintained adequate mechanisms of quality control over Chinese entities in its supply chain to ensure that its laminate flooring was CARB compliant;

b.      Whether Lumber Liquidators marketed, labeled, or otherwise represented that its laminate flooring was CARB compliant;

c.      Whether Lumber Liquidators' laminate flooring exceeds the CARB limits;

d.      Whether Lumber Liquidators' representations regarding the affected laminate flooring's CARB compliance were false;

e.      Whether Lumber Liquidators knew, or in the exercise of reasonable diligence should have known, that its representations regarding the CARB compliance of its laminate flooring products were false or deceptive;

f.      Whether Lumber Liquidators' representations regarding the CARB compliance of its laminate flooring would deceive a reasonable consumer;

g.      Whether Lumber Liquidators' conduct with regard to the marketing and sale of the its laminate flooring constitutes unfair, deceptive, untrue, or misleading advertising;

h.      Whether Lumber Liquidators profited from mislabeling its laminate flooring products;

i.      Whether Lumber Liquidators violated the California Unfair Competition Law, the California False Advertising Law, the Consumers Legal Remedies Act, and the Texas Deceptive Trade Practices and Consumer Protection Act;

j.      Whether Lumber Liquidators acted negligently in mislabeling the affected laminate flooring or by failing to detect that such laminate flooring did not contain CARB compliant levels of formaldehyde; and

k.      Whether Lumber Liquidators' conduct described above caused Plaintiffs and Class members to suffer injury.

72.   <u>Typicality – Fed. R. Civ. P. 23(a)(3)</u>.  Plaintiffs' claims are typical of the claims of the Class because, among other things, they purchased Lumber Liquidators laminate flooring due to Lumber Liquidators' misstatements and lost money as a result.

73.   <u>Adequacy of Representation – Fed. R. Civ. P. 23(a)(4)</u>.   Plaintiffs are adequate representatives because their interests are aligned with those of the Class members they seek to represent.  Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously on Class members' behalf.

74.   <u>Superiority – Fed. R. Civ. P. 23(b)(3)</u>.  The action may be certified under Rule 23(b)(3) because common questions predominate as described above and because a class action is the best available method for the fair and efficient adjudication of this controversy.  This litigation involves technical issues relating to—among other things—chemical testing of formaldehyde that will require expert testimony and targeted discovery of sophisticated defendants, and could not practically be taken on by individual litigants.   In addition, individual litigation of Class members' claims would be impracticable and unduly burdensome to the court system and has the potential to lead to inconsistent results.   A class action presents fewer management problems and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

75.   In the alternative to class certification under Rule 23(b)(3), the proposed Class may be certified under 23(b)(2) because Lumber Liquidators has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class.

## **TOLLING**

76.   Any applicable statute of limitations that might otherwise bar any Class member's claims has been tolled by Lumber Liquidators' knowing and active concealment of the facts above.  Plaintiffs and members of the Class were ignorant of vital information essential to the pursuit of their claims. Plaintiffs and members of the Class could not reasonably have discovered that Lumber Liquidators' flooring included toxic levels of formaldehyde because evidence relating to the falsity of Lumber

19

Liquidators' statements was not publicly available until the recent testing of such flooring by accredited laboratories.

## FIRST CAUSE OF ACTION

### (For Unlawful, Unfair, and Fraudulent Business Practices under Cal. Bus. and Prof. Code §§ 17200, et seq.)

77.    Plaintiffs, on behalf of themselves and the Class, reallege as if fully set forth, each and every allegation set forth above.

78.    Lumber Liquidators has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq., which prohibits unlawful, unfair, or fraudulent business acts or practices.

79.    Lumber Liquidators' acts and practices constitute unlawful business practices in that they violate the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq., California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq., and the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, et seq.

80.    Lumber Liquidators' acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer.  Lumber Liquidators falsely represented that the affected laminate flooring products contained CARB compliant levels of formaldehyde.  It also failed to disclose that it maintained inadequate quality control mechanisms for formaldehyde testing and that such laminate flooring was mislabeled and contained toxic levels of formaldehyde—a significant public health danger.  A reasonable consumer would not have purchased the affected laminate flooring products from Lumber Liquidators if the company had adequately disclosed that its product was unreasonably dangerous, lacked appropriate quality control mechanisms, and/or was mislabeled.

81.    Lumber Liquidators' fraudulent acts and practices also constitute unfair business practices in that:

a.    The legitimate utility of Lumber Liquidators' conduct is outweighed by the harm to Plaintiffs and other members of the Class;

b.      Lumber Liquidators' conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the other members of the Class; and

c.      Lumber Liquidators' conduct violates the policies underlying the Consumers Legal Remedies Act—to protect consumers from unfair or deceptive business practices.

82.     As a direct and proximate result of Lumber Liquidators' unlawful, unfair, and fraudulent business practices as alleged above, Plaintiffs and Class members have suffered injury in fact and lost money or property, because they purchased and paid to install Lumber Liquidators Chinese manufactured laminate flooring containing toxic levels of formaldehyde that they otherwise would not have, and because such laminate flooring is valueless and hazardous to Plaintiffs and Class members' health.  Meanwhile, Lumber Liquidators has generated more revenue than it otherwise would have and charged inflated prices for valueless products, unjustly enriching itself.

83.     Plaintiffs and Class members are entitled to equitable relief, including restitutionary disgorgement of all profits accruing to Defendants because of their unlawful, unfair, fraudulent, and deceptive practices; attorney's fees and costs; declaratory relief; and a permanent injunction enjoining Defendants from their unlawful, unfair, fraudulent, and deceitful activity.


## SECOND CAUSE OF ACTION

### (For False Advertising under Business and Professions Code §§ 17500, et seq.)

84.     Plaintiffs, on behalf of themselves and the Class, reallege as if fully set forth, each and every allegation set forth above.

85.     Lumber Liquidators' acts and practices, as alleged in this complaint, constitute untrue and misleading statements in violation of the False Advertising Law, Cal. Bus & Prof. Code §§ 17500, et seq.

86.     Lumber Liquidators violated the False Advertising Law by advertising on its website and on its product packaging that the affected laminate flooring contained CARB compliant levels of formaldehyde.  In fact, the affected laminate contains formaldehyde levels well over the CARB limits, posing an imminent and significant danger to Plaintiffs and Class members' health.

87.     Lumber Liquidators knew or should have known that the advertising on its website and product packaging was untrue or misleading.

88.     Lumber Liquidators' false advertising, misrepresentations, and material omissions were and are likely to deceive a reasonable consumer.

89.     As a direct and proximate result of Lumber Liquidators' false advertising, Plaintiffs and Class members have suffered injury in fact and lost money or property, in that they purchased the affected laminate flooring when they otherwise would not have.  Meanwhile, Lumber Liquidators has sold more of the affected laminate flooring than it otherwise would have and better gross margins, unjustly enriching itself.

90.     Plaintiffs and Class members are entitled to equitable relief, including restitution of all amounts paid for the affected laminate flooring, restitutionary disgorgement of all profits accruing to Defendants because of their unfair and fraudulent practices, attorney's fees and costs, declaratory relief, and a permanent injunction enjoining Defendants from their unfair and fraudulent activity.

## THIRD CAUSE OF ACTION

### (For Violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq.)

91.     Plaintiffs, on behalf of themselves and the Class, reallege as if fully set forth, each and every allegation set forth above.

92.     Each Defendant is a "person" within the meaning of Civil Code §§ 1761(c) and 1770, and provided "goods" within the meaning of Civil Code §§ 1761(a) and 1770.

93.     Plaintiffs and members of the Class are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770, and each has engaged in a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

94.     Lumber Liquidators' acts and practices, as alleged in this complaint, violate the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770(a)(5), (7), (14), and (16), by engaging in unfair methods of competition and unfair and deceptive acts and practices in connection with transactions— namely, the sale of the affected laminate products to Plaintiffs and members of the Class. This conduct

was intended to result and did result in the sale of these goods to consumers. Specifically, Lumber Liquidators:

    a. Represented that the affected laminate had approval or characteristics that it did not have;

    b. Represented that the affected laminate was of a particular standard, quality, or grade when it was of another;

    c. Represented that consumers' purchases of affected laminate conferred or involved rights that the transactions did not have or involve; and

    d. Represented that the affected laminate was supplied in accordance with Lumber Liquidators' representations, when the affected laminate was not supplied that way.

95. As a direct and proximate result of Lumber Liquidators' conduct, Plaintiffs and Class members have been harmed, in that they purchased and paid to install laminate flooring that they otherwise would not have, and because such laminate flooring is valueless and hazardous to Plaintiffs and Class members' health. Meanwhile, Lumber Liquidators has generated more revenue than it otherwise would have and charged inflated prices for valueless products, unjustly enriching itself.

96. Plaintiffs and Class members are entitled to equitable relief, attorney's fees and costs, declaratory relief, and a permanent injunction enjoining Lumber Liquidators from its unlawful, fraudulent, and deceitful activity.

97. Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiffs will send a notice letter to Defendants to provide them with the opportunity to correct their business practices. If Defendants do not thereafter correct their business practices, Plaintiffs will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution, actual, and punitive damages under the Consumers Legal Remedies Act.

## FOURTH CAUSE OF ACTION

**(For Violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790, et seq.)**

98. Plaintiffs, on behalf of themselves and the Class, reallege as if fully set forth, each and every allegation set forth above.

99.     The affected laminate flooring products are "consumer goods" under Cal. Civ. Code § 1791(a).

100.     Plaintiffs and Class members are "buyers" or "retail buyers" under Cal. Civ. Code § 1791(b).

101.     Defendants are "manufacturers," "distributors," and/or "retail sellers" under Cal. Civ. Code §§ 1791(e), (j), and (l).

102.     The implied warranty of merchantability included with each sale of the affected laminate flooring means that Lumber Liquidators warranted that such laminate flooring (a) would pass without objection in the trade under the contract description; (b) was fit for the ordinary purposes for which laminate flooring is used; (c) was adequately contained, packaged, and labeled; and (d) conformed to the promises or affirmations of fact made on the container or label. Cal. Civ. Code § 1791.1(a).

103.     The written express warranty included with each sale of the affected laminate flooring warranted that such laminate flooring contained CARB compliant levels of formaldehyde. Cal. Civ. Code § 1791.2.

104.     Lumber Liquidators breached the implied warranty of merchantability and thereby violated the Song-Beverly Consumer Warranty Act by selling laminate flooring containing toxic levels of formaldehyde in excess of the CARB limits to its substantial customer base—including Plaintiffs and Class members—endangering their health thereby.

105.     Lumber Liquidators breached an express warranty to Plaintiffs and the Class because the affected laminate flooring contained levels of formaldehyde in excess of the CARB limits.

106.     Plaintiffs and Class members have been damaged by Lumber Liquidators' breach of the implied warranty of merchantability and breach of express warranty and therefore seek damages, other legal and equitable relief, and an award of attorneys' fees, costs, and expenses. Cal. Civ. Code § 1794(a) and (d).

## FIFTH CAUSE OF ACTION

**(Violation of Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, et seq.)**

107.    Plaintiffs, on behalf of themselves and the Class, reallege as if fully set forth, each and every allegation herein.

108.    The purposes of the Texas Deceptive Trade Practices and Consumer Protection Act (DTPA) is to "protect consumers against false, misleading, and deceptive practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection," and it is liberally construed to effect those purposes. Tex. Bus. & Com. Code § 17.44.

109.    Plaintiffs and Class members are "consumers," the affected laminate flooring products are "goods," and Lumber Liquidators was engaged in "trade or commerce" as those terms are defined by § 17.45 of the DTPA.

110.    Lumber Liquidators has violated section 17.50(a)(1) and 17.46(b)(24) of the DTPA by failing to disclose to Plaintiffs and Class members that the formaldehyde levels contained in its laminate flooring were toxic, in excess of the CARB limits, and therefore present a safety hazard.

111.    Lumber Liquidators misstatements and omissions were intended to induce Plaintiffs and Class members to purchase laminate flooring they otherwise would not have purchased at a price they otherwise would not have paid. Plaintiffs and Class members relied upon Lumber Liquidators' misstatements and omissions to their detriment, purchasing laminate flooring they otherwise would not have purchased at a price they otherwise would not have paid.

112.    Lumber Liquidators has also violated section 17.50(a)(3) of the DTPA by selling toxic laminate flooring with formaldehyde levels in excess of the CARB limits to its substantial customer base, including Plaintiffs and Class members.    Lumber Liquidators' conduct constitutes an unconscionable course of action, as it took advantage of Plaintiffs and Class members' lack of knowledge to a grossly unfair degree and has left them with laminate flooring that is without value and that poses an imminent, serious danger to their health.

113.    As a direct and proximate result of Lumber Liquidators' conduct, Plaintiffs and Class members have been harmed in that they purchased affected laminate flooring they otherwise would not have, paid more for the affected laminate flooring than they otherwise would have, paid for installation of such laminate flooring, and are left with laminate flooring with no value or utility because of the toxic levels of formaldehyde contained therein. Meanwhile, Lumber Liquidators has sold more of the affected

laminate flooring than it otherwise could have and charged inflated prices for such laminate flooring at a lower cost of production, unjustly enriching itself thereby.

114.    Lumber Liquidators is liable to Plaintiffs and Class members for damages in amounts to be proven at trial, including attorneys' fees recoverable pursuant to § 17.50(d) of the DTPA, costs, and treble damages.

115.    Pursuant to §17.50 of the DTPA, Plaintiffs and Class members seek damages, a declaration that Defendants' conduct is unlawful, and an order requiring Lumber Liquidators to adequately disclose formaldehyde levels in its laminate flooring, and to implement sufficient levels of quality control and oversight over foreign entities in their supply chain in order to protect against such unlawful conduct recurring.

## SIXTH CAUSE OF ACTION

### (Negligence)

116.    Plaintiffs, on behalf of themselves and the Class, reallege as if fully set forth, each and every allegation set forth above.

117.    Lumber Liquidators owed Plaintiffs and Class members a duty to provide an accurate representation of the formaldehyde levels present in the laminate flooring it sold them. Lumber Liquidators also owed Plaintiffs and Class members a duty to exercise reasonable quality control over such laminate flooring prior to offering it to the public for purchase.  And Lumber Liquidators owed Plaintiffs and Class members a duty, once it discovered the toxic levels of formaldehyde—via the *60 Minutes* hidden camera footage shown to its CEO or otherwise—to ensure that an appropriate quality control procedure to guard against future violations was developed and immediately implemented.

118.    Lumber Liquidators owed a duty to Plaintiffs and Class members not to engage in fraudulent or deceptive conduct, including the omission of material information like the presence of toxic levels of formaldehyde in the affected laminate flooring.

119.    Lumber Liquidators also owed an independent duty to Plaintiffs and Class members to accurately represent the characteristics of the affected laminate flooring under the Consumers Legal Remedies Act, Cal. Civ. Code. §§ 1750 et. seq.

120.     A finding that Lumber Liquidators owed a duty to Plaintiffs and Class members would not impose a significant burden.  Lumber Liquidators has the means to accurately apprise the public of the ingredients in its laminate flooring by ensuring that adequate quality control mechanisms are in place at the appropriate levels in its supply chain and are followed by affected employees and/or vendors.  The cost borne by Lumber Liquidators for these efforts is insignificant in light of the public health dangers posed to Plaintiffs and Class members by the failure to take steps toward ensuring that consumers are apprised of the levels of toxic chemicals in the products they purchase.

121.     As recently established by the testing discussed above, Lumber Liquidators manufactured, sold and shipped to Plaintiffs and Class members laminate flooring with toxic levels of formaldehyde in excess of the CARB limits while concurrently representing that such floorboards contained formaldehyde within the CARB limits.  In doing so, Lumber Liquidators departed from the reasonable standard of care and breached its duties to Plaintiffs and other purchasers of the affected laminate flooring.

122.     As a direct, reasonably foreseeable, and proximate result of Lumber Liquidators' failure to exercise reasonable care, Plaintiffs and Class members have suffered damages because they spent more money on the affected laminate flooring—including installation—than they otherwise would have.

123.     Plaintiffs and Class members could not have prevented these damages through the exercise of reasonable diligence.  Neither Plaintiffs nor other Class members contributed to Lumber Liquidators' misstatements.

124.     Plaintiffs and Class members seek to recover their damages caused by Lumber Liquidators.  In addition, since Lumber Liquidators acted fraudulently, and with wanton and reckless misconduct, in conscious disregard of the safety of Plaintiffs and Class members, Plaintiffs also seek an award of exemplary damages.

## SEVENTH CAUSE OF ACTION

### (Declaratory Relief)

125.     Plaintiffs incorporate each and every allegation above as if fully set forth herein

126.    An actual controversy, over which this Court has jurisdiction, has arisen and now exists between the parties relating to the legal rights and duties of Plaintiffs and Defendants for which Plaintiffs desire a declaration of rights.

127.    Plaintiffs contend and Defendants dispute that Defendants' acts, practices and conduct violates California's Unfair Competition Law, California's False Advertising Law, the Consumer Legal Remedies Act, the Texas Deceptive Trade Practices and Consumer Protection Act, as alleged above.

128.    Plaintiffs, on behalf themselves and the Class, are entitled to a declaration that Defendants illegally represented that the affected laminate flooring products contained levels of formaldehyde within the CARB limits when in fact such laminate flooring contained toxic levels of formaldehyde exceeding the CARB limits in violation of the state statutes and laws alleged herein, and are entitled to injunctive relief to enforce the Court's declaration.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment as follows:

    (a)    For an order certifying the proposed Class and appointing Plaintiffs and their counsel to represent the Class;

    (b)    For an order awarding Plaintiffs and members of the Class:

        (i)    Actual, statutory, common law, and exemplary damages as provided by California and federal law, except that no monetary relief is presently sought for violations of the CLRA;

        (ii)    Disgorgement of all revenues unjustly earned by Defendants by selling laminate flooring containing toxic amounts of formaldehyde in excess of the CARB limits, except that no monetary relief is presently sought for violations of the CLRA;

        (iii)    Pre-judgment and post-judgment interest; and

        (iv)    Reasonable attorneys' fees and costs of suit, including but not limited to expert witness fees.

(c)     For appropriate injunctive relief, including enjoining Lumber Liquidators from continuing to engage in unlawful business practices as alleged above; and

(d)     For a declaratory judgment that the conduct complained of in this Complaint is unlawful and violates state and federal law.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

DATED: March 9, 2015                    Respectfully submitted,

                                        **GIRARD GIBBS LLP**


                                        By: _____/s/ Eric H. Gibbs_____
                                               Eric H. Gibbs

                                        Daniel C. Girard
                                        Adam E. Polk
                                        Steve A. Lopez
                                        **GIRARD GIBBS LLP**
                                        601 California Street, 14th Floor
                                        San Francisco, California 94104
                                        Telephone: (415) 981-4800
                                        Facsimile:  (415) 981-4846
                                        Email: dcg@girardgibbs.com
                                        Email: ehg@girardgibbs.com
                                        Email: aep@girardgibbs.com
                                        Email: sal@girardgibbs.com

                                        *Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT – Case No. 4:15-cv-1074